UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------x
UNITED STATES OF AMERICA               :
                                       :        1:18-CR-00388-ER-1
        v.                             :
                                       :
                                       :
ELIZABETH ANN PIERCE                   :
------------------------------------------------------x
```

## SENTENCING MEMORANDUM

Ms. ELIZABETH ANN PIERCE respectfully submits the following position on sentencing:

**I.      Sentencing Guidelines**

The probation officer asserts that Ms. Pierce's sentencing guidelines range is 210–240 months of imprisonment, based on a total offense level of 37 and a criminal history category of I. (P.S.R. ¶¶ 57–68, 113.)  The Government agrees. (*Id.* add. at 32.)  Ms. Pierce, however, submits that her sentencing guidelines range is 30–37 months of imprisonment, based on a total offense level of 19, and a criminal history category of I.  Ms. Pierce and the probation officer's sentencing guidelines calculations differ regarding the amount of loss (a 16-level difference) and whether the offense involved sophisticated means (a 2-level difference).

### a. Base Offense Level

Ms. Pierce and the probation officer, pursuant to U.S.S.G. § 2B1.1(a)(1), agree that the base offense level for the offense of conviction—Wire Fraud in violation of 18 U.S.C. § 3143—is 7. (P.S.R. ¶ 59.)

### b. Amount of Loss

The probation officer, pursuant to U.S.S.G. § 2B1.1(b)(1)(O), asserts that the amount of loss is more than $250MM, but less than $550MM, resulting in a base offense level increase of 28-levels. (P.S.R. ¶ 60.) The probation officer bases this assertion on the Government's estimate of the aggregate amount of investments by one victim entity in the approximate amount of $296MM, and two victim individuals in the amount of $365,000. (P.S.R. ¶¶ 36–37, 41, 43, add. at 32.)

The amount of loss, for sentencing guidelines purposes, "is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, comment. (n.3(A)). Actual loss is "the reasonably foreseeable pecuniary harm that resulted from the offense" (*Id.* at (n.3(A)(i))), while intended loss is "the pecuniary harm that the defendant purposefully sought to inflict" (*Id.* at (n.3(A)(ii))).

### 1. Actual Loss

While Ms. Pierce agrees that she caused the victim entity to invest over

$250MM variously in her company, she disagrees that the victim entity suffered that amount of pecuniary harm.  The victim entity's investment was not unsecured; not all of the forged contracts upon which it relied to invest were worthless; the project into which it invested is progressing toward completion; and Ms. Pierce's company, a going concern with which she is no longer associated, of course, is thriving.  Therefore, Ms. Pierce submits that the actual loss in this case is not the amount of money that the victim entity invested in her company, but rather that amount less any realized or future return on that investment, or the investment adjusted for present value, not unlike credits against loss for collateral pledged (*see Id.* at (n.3(E)(ii)).  While Ms. Pierce will address this issue in detail at sentencing, she expects that the actual loss in this case, equitably, will be limited to the pecuniary harm to the victim individuals, which Ms. Pierce agrees is $365,000, resulting in a base offense level increase of only 12 levels pursuant to U.S.S.G. § 2B1.1(B)(1)(G).

      **2.**    **Intended Loss**

Ms. Pierce submits that she was one of the original co-founders of her company (P.S.R. ¶ 16); she served as its chief executive officer from 2013–2017 (P.S.R. ¶ 98); and she owns—although subject to forfeiture—a substantial interest in it, estimated by the Government to be approximately

$7MM (P.S.R. ¶ 102).  There is no plausible argument, considering those facts, that she purposefully sought to inflict any financial harm to the victim entity or individuals: she sought to raise sufficient capital to complete her company's project, which would have allowed the company to pay everyone, including herself, a profit.  Therefore, the intended loss is $0.

  **c. Sophisticated Means**

The probation officer, pursuant to U.S.S.G. § 2B1.1(b)(10)(C), asserts that the offense involved sophisticated means, resulting in a base offense level increase of 2-levels. (P.S.R. ¶ 61.)  In response to Ms. Pierce's objection to this assertion, the probation officer explains that the assertion is based on Ms. Pierce's having manufactured contracts, emails, and revenue projections in an effort to execute and conceal the offense. (P.S.R. add. 32–33.)

Ms. Pierce is familiar with the legal authority that the probation officer cites in support of this often-overused specific offense characteristic that various probation offices seem to recommend in almost every fraud case; nonetheless, she maintains her position that her execution and concealment of the offense was not "especially complex or especially intricate," and certainly is not analogous to the use of "fictitious entities, corporate shells, or offshore financial accounts." *See* U.S.S.G. § 2B1.1, comment. (n.9(B)).  While

Ms. Pierce wholeheartedly recognizes that only she is responsible for her criminal conduct, the fact remains that her scheme was so rudimentary that the victim entity, an experienced venture capital company, could have discovered the fraud before investing any money by simply contacting the purchaser parties in the forged contract and agreements in an effort to confirm the authenticity of those documents.

### d. Role in the Offense

Ms. Pierce and the probation officer, pursuant to U.S.S.G. § 3B1.3, agree that the base offense level should be adjusted upward 2 levels for Ms. Pierce's abusing a position of private trust, and Ms. Pierce withdraws her objection to that adjustment. (P.S.R. ¶ 63.)

### e. Acceptance of Responsibility

Ms. Pierce and the probation officer, pursuant to U.S.S.G. § 3E1.1(a), agree that the adjusted offense level should be adjusted downward 2 levels for Ms. Pierce's acceptance of responsibility for the offense. (P.S.R. ¶ 67.)

### f. Sentencing Guidelines Range

Ms. Pierce, based on her foregoing assertion, submits that her sentencing guideline range should be 30–37 moths of imprisonment,

exclusive of the mandatory consecutive two-year penalty pursuant to 18 U.S.C. § 1028A(b) and U.S.S.G. § 2B1.6.

## II.   Sentencing Statute

Ms. Pierce and the probation officer agree that a downward variance is appropriate (P.S.R. add. 38); however, they disagree on the degree of that variance based on their differing sentencing guidelines calculations. Ms. Pierce will present evidence at sentencing in support of her position that a sentence substantially below the sentencing guidelines range would be "sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." 18 U.S.C. § 3553(a).

Date:       June 6, 2019

>                             Respectfully submitted,
>
>                             *s/ **Joshua Sabert Lowther, Esq.***
>                             Joshua Sabert Lowther, Esq.
>                             Ga. Bar # 460398
>                             M 912.596.2935
>                             jlowther@lowtherwalker.com
>
>                             Lowther | Walker LLC
>                             101 Marietta St., NW, Ste. 3325
>                             Atlanta, GA 30303
>                             T 404.496.4052
>                             http://www.lowtherwalker.com
>
>                             Attorney for Elizabeth Ann Pierce